hPER CURIAM.
AMENDED
This appeal involves a dispute between two law firms concerning the division of a contingent attorney’s fee resulting from a jury verdict rendered in favor of plaintiff in a wrongful death suit. Both parties have appealed from the judgment of the trial court. We amend and affirm in part and reverse in part and render.

FACTS AND PROCEDURAL HISTORY

William Barnard was killed in a vehicular accident on a northern Louisiana highway on August 16, 1987. Thereafter, Judy Warren (a/k/a Judy Barnard or Judy Weaver, hereinafter referred as Mrs. Warren), Barnard’s former spouse and a resident of the state of Florida, retained Corey Stutin of the Florida law firm of Rice, Steinberg and Stutin to represent her in bringing a wrongful death suit on behalf of the minor child, Tammy Barnard. On August 26, 1987, Mrs. Warren and Stutin entered into a contingent fee contract whereby Stutin would receive as his professional fee one-third of the amount recovered from a settlement of the claim and 40 percent of any recovery up to one million dollars following a trial of the matter. After an initial investigation, discovery and unsuccessful attempts to settle plaintiffs demands, Stutin, with Judy Warren’s knowledge and consent, associated John Cummings of the New Orleans law firm of Cummings, Cummings and Dudenhefer. Cummings and Stu-tin orally agreed to share any attorney’s fees recovered from the litigation of the Barnard matter. The specific Lterms of this agreement are disputed by the parties.
A petition for wrongful death and for punitive damages was subsequently filed in federal district court in Monroe by Judy Warren on behalf of the minor child, Tammy Barnard.[1] Among those named as defendants were John Frederick, the driver of another vehicle involved in the accident with the Barnard vehicle, and Frederick’s employer. Frederick was alleged to be under the influence of narcotics at the time of the accident, and plaintiff sought punitive damages on that basis.
The parties operated under the original contract of representation until October 9, 1991, when Mrs. Warren entered into a written contract of employment with the Cummings law firm which contained the same contingency fee arrangement as in the original contract for representation executed by Corey Stutin, but included a provision for a contingent fee of 50% on any punitive damage award obtained. The matter was tried to a jury in November, 1991, and the jury rendered a verdict in favor of plaintiff in the amount of $565,000.00 in compensatory and punitive damages, resulting in attorney’s fees in the amount of $260,428.00.
Neither Corey Stutin nor any member of his firm attended the trial of this matter. In fact, in April bf 1990, over one year prior to the trial, Corey Stutin sold his interest in his law partnership to his partner Charles Stein-berg and temporarily ceased the practice of law. By agreement between the partners, however, Stutin retained an individual interest in the fees earned in certain listed cases, including the Barnard case.
13After the jury verdict in the Barnard case was rendered, Charles Steinberg attempted' to enforce the contingency fee agreement contained in his law firm’s contract of representation and Stutin’s oral agreement to share attorney’s fees with the Cummings firm. The parties were unable to reach an agreement as to the division of the fees, and this lawsuit followed.
On October 28,1992, Charles R. Steinberg, on behalf of the Florida law firm of Rice, Steinberg & Stutin, P.A., filed the instant lawsuit in Civil District Court against the New Orleans law firm of Cummings, Cummings and Dudenhefer for alleged breach of an oral fee-sharing contract. Corey Stutin was not made a party to these proceedings. Defendant, Cummings, Cummings and Du- *10 denhefer, answered this petition and contended that Corey Stutin had failed to participate in the litigation of the Barnard case, and had actually ceased practicing law prior to the trial of the Barnard matter, and therefore Cummings was not obligated to share the attorney’s fees with Stutin or any member of Stutin’s law firm. Cummings contended that Steinberg was limited to recovering his fees on a quantum meruit basis.
This matter was tried in a bench trial on September 16-18, 1996. At trial, plaintiff introduced the testimony of Corey Stutin and Charles Steinberg, and also the cross-examination of Frank Dudenhefer, in an effort to prove that the Steinberg firm was entitled to 50% of the attorney’s fees obtained in the Barnard case. Defendant introduced the testimony of John Cummings and Richard Martin, an associate of the Cummings firm.
Following trial, on October 7, 1996, the court rendered judgment in favor of plaintiff, Rice, Steinberg and Stutin, P.A., finding that firm was entitled to 30% of the legal fee resulting from the trial of the Barnard case, or 14$78,126.00. In its reasons for judgment, the court stated that it found that the two law firms had entered into a joint venture agreement to conduct the legal work for Mrs. Warren on behalf of the minor child, Tammy Barnard. However, the court declined to award the plaintiff firm the entire 50% of the fee because “the plaintiff firm failed to fulfill all of its obligations under the joint venture agreement, i.e., 50% of the responsibility, work and expenses.” In reaching this determination, the court found significant that Stutin left the practice of law during the litigation without notifying the Cummings firm.
Thereafter, defendant filed a motion for new trial or alternatively to amend the judgment dated October 7, 1996. Although the trial court rejected defendant’s claim that plaintiff was only entitled to be compensated on a quantum meruit basis, by judgment dated December 20, 1996,' the trial court amended the previous judgment to reduce the amount of the fee owed to plaintiff to 15% of the total fee, based on the fact that Corey Stutin was not named as a plaintiff in the original petition. Following this judgment, the plaintiff firm filed a motion for reconsideration, motion for new trial and motion for leave to file the fourth supplemental petition naming Corey Stutin as plaintiff. However, the trial court denied these motions on March 11,1997.
It is from this judgment that plaintiff now appeals. Defendant has answered the appeal and has asserted several assignments of error.

DISCUSSION

Defendant contends on appeal that the trial court erred in determining that a joint venture existed between Stutin’s firm and the Cummings firm. Defendant argues that although the parties initially agreed to work together on the Barnard case, Stutin and Steinberg’s actions in failing to participate in the litigation |Bprevented the development of the joint venture. Defendant also contends that the trial court’s award to Steinberg of 15% of the fee is excessive, and argues that Steinberg must recover on a quantum meru-it basis.
Plaintiff contends on appeal that as the trial court determined that the parties entered into a joint venture, the court was obligated to order an equal sharing of the attorney fees recovered, and the trial court erred in setting the Steinberg firm’s percentage of the fee at 30%. Plaintiff argues that the Steinberg firm is entitled to a full 50% of the fee recovered as a result of the Barnard lawsuit. Plaintiff further argues that the trial court erred in reducing the award by half for failure to include Stutin as a party plaintiff or in the alternative in failing to allow plaintiff to amend the petition to include Stutin as a plaintiff.

Joint Venture

In finding there was a joint venture between the Cummings firm and the Stein-berg firm, the trial court relied on a decision of this court, Thomas v. B.J. Titan Services Co., 95-2377 (La.App. 4 Cir. 11/22/96) 675 So.2d 747, and on a decision of the Louisiana Supreme Court, Duer and Taylor v. Blanchard, 354 So.2d 192 (La.1978). In Duer and Taylor, 354 So.2d at 194-195, the Supreme Court held as follows:
*11 Where an attorney retained in a case employs or procures the employment of another attorney to assist him, as regards the division of the fee, the agreement constitutes a joint adventure or a special partnership. McCann v. Todd, 203 La. 631, 14 So.2d 469 (1943). The interest which each attorney possesses under such an agreement is the right to participate in the fund resulting from the payment of the fee by the client.
At trial, John Cummings testified that he entered into an oral agreement 16with Corey Stutin to share fees in this case which was referred to him by Stutin. Cummings stated he had previously worked with Corey Stutin on a case which Cummings referred to Stutin in 1985 entitled Olive Souilant v. WaltDisneyworld. Cummings testified that both he and Stutin participated actively in the trial of the Souilant case in Florida and that the attorney’s fees and costs were split evenly at the conclusion of that case. Cummings testified that the Barnard case was referred to his firm by Corey Stutin in 1988, and that he assigned the case to his law partner, Frank Dudenhefer. With regard to the division of the attorney’s fees, Cummings testified that he agreed with Stutin that there would be a similar arrangement as the one in the Soui-lant case. During his trial testimony, Cummings described the oral agreement as follows:
Equal work; equal sharing of expenses; equal fee, if the first two were met.
Corey Stutin testified at trial that he entered into an employment contract on behalf of his law firm, Rice, Stutin and Steinberg, with Mrs. Warren which contract included a contingency fee agreement for the payment of Stutin’s professional fees. Following the execution of this agreement, Stutin’s firm name was changed to Stutin and Steinberg, and Stutin stated that his partner, Charles Steinberg, assisted him with the Barnard file, as he did with all partnership files. With the consent of Mrs. Warren, Stutin associated the Cummings firm for assistance on the Barnard matter and entered into an oral agreement to share the attorney’s fees on an equal basis. Stutin testified that the agreement was similar to the attorneys’ previous agreement in the Souilant case — the two firms would share costs and fees on an equal “50-50” basis. Stutin testified that he .temporarily stopped practicing law in 1990 and sold his interest in the partnership |7to Charles Steinberg, but retained an interest in certain enumerated legal fees.
Under the circumstances presented here, we find no error in the trial court’s determination that the parties entered into a joint venture agreement. We turn next to the question of whether the agreement was breached.
The trial court determined that there had been a breach of the joint venture agreement, finding that the Steinberg firm had failed to fulfill all of its obligations under the agreement. We have carefully reviewed the entire record in this matter, including the testimony of the. witnesses and the numerous exhibits introduced at the trial, and conclude that the trial court’s determination that the joint venture agreement was breached is manifestly erroneous.
John Cummings testified at trial that he believed his oral agreement to share the fee with Stutin had been breached because Stu-tin and Steinberg did not actively participate in the case and in fact Stutin stopped practicing law during the litigation. Cummings admitted that he did not inform Stutin or Stein-berg of this breach prior to the trial of this case. He instructed Frank Dudenhefer to discuss this situation with Steinberg.
Frank Dudenhefer, who was the lead counsel on the Barnard file for the Cummings firm, testified that the parties agreed in the Barnard case that the attorney’s fee would be handled in a similar manner as the fee in the Souilant case. The fee would be based on the relative contribution of the work done by both firms. Mr. Dudenhefer testified:
My understanding has always been that the Barnard file was an equal sharing of fee provided there’s an equal sharing of the work, providing there’s an equal sharing of the cost. And the fee is going to be dependent on the work efforts and responsibilities. And if it’s ninety-ten, it would be ninety-ten.
*12 IsCorey Stutin testified that he entered into a contract on behalf of the law firm of Rice, Steinberg and Stutin with Judy Warren which contained a contingency fee agreement. He stated he did intitial investigation and discovery in the ease, and then referred the case to the New Orleans law firm in 1988. His understanding of the fee-sharing agreement was that the fee would be split “50-50” as it was in the Souilant matter, and he discussed this with Cummings and Dudenhe-fer. He also stated that he informed Duden-hefer that he wanted to be as active in the file as the Cummings firm requested. However, Stutin stated the Cummings firm rarely asked for assistance, and he did not refuse requests.
Charles Steinberg corroborated Stutin’s testimony and stated that following the departure of Stutin from the firm, he continued to perform legal services as needed on the Barnard case. He admitted that he did not attend the trial or any depositions, but stated he spoke to members of the Cummings firm on several occasions, and never refused any assistance in this case.
Louisiana courts have generally refrained from examining professional contracts between attorneys who agree to share legal fees to determine whether one attorney performed more work than the other. In McCann v. Todd, 203 La. 631, 14 So.2d 469 (La.1943), the court held that when one attorney engages another to assist in the representation of a client under a contingency fee contract, they share equally in the fee, and it is immaterial that one attorney may provide more labor or skill than the other. See also, Defrancesch v. Hardin, 510 So.2d 42 (La. App. 1 Cir.) writ denied, 513 So.2d 819 (La. 1987); Scurto v. Siegrist, 598 So.2d 507, 510, (La.App. 1 Cir.), writ denied, 600 So.2d 683 (La.1992). In Scurto v. Siegrist, the Court stated as follows:
I ¡/The agreement between .plaintiff and defendant was one confected between two professionals and we will not assume the position of dictating to attorneys in a Duer situation exactly how much work they need perform to entitle them to a certain fee.
The evidence in the record indicates that Cummings and Stutin entered into an oral agreement to share the fees recovered in the Barnard ease on a 50-50 basis, as was the case in the Souilant matter. The closing statement in the Souilant matter was introduced at trial, and shows that the attorney’s fee was $40,000.00, and the Steinberg firm remitted, a check to the Cummings firm for $20,000.00 plus reimbursement for costs advanced. The testimony with regard to the amount of work expended by the parties in this matter was conflicting.
In the present case, there is substantial evidence that the Steinberg firm provided substantial services in the resolution of the Barnard ease. Corey Stutin secured the client, which Cummings acknowledged at trial is a substantial portion of the case. Further, the record shows that Stutin secured the services of a psychiatrist on behalf of the minor child, and vigorously attempted to settle plaintiffs demands with the insurance adjuster and counsel for defendant prior to the institution of proceedings. Stutin obtained the police report of the accident and secured drug test results on the driver of the vehicle. He also hired a private investigator to locate the driver of the vehicle who was ultimately held responsible for this accident. In an effort to settle the case, Stutin secured a photo album of the child with her deceased father which he gave to Frank Dudenhefer and which undoubtedly aided the trial attorneys in presenting the case to the jury. Further, Stutin secured answers to interrogatories and request for production of documents from Mrs. Warren after the lawsuit was filed. Stutin lipaiso maintained contact with the client from the beginning of the case until March 6, 1990, when he informed Mrs. Warren by letter that he would not be practicing law for a period of time, and that Charles Steinberg would take over the active representation of the case.
Although defendant makes much of the fact that Stutin temporarily stopped practicing law during the litigation of the ease, the record shows that Charles Steinberg continued to provide legal services to the client after Stutin’s withdrawal from the partnership. Steinberg continued to correspond with the Cummings law firm, and there are numerous letters in the record from Charles *13 Steinberg to Frank Dudenhefer and his associate Richard Martin concerning this case. In June.of 1990, Charles Steinberg requested return of Tammy Barnard’s photo album from the Cummings firm and returned it to the client. In November of 1990 and March of 1991, Steinberg requested updates from Richard Martin on the status of the case and on the trial date. In September of 1991, Steinberg contacted Mrs. Warren and informed her of the trial date and gathered information concerning her travel arrangements. Steinberg was also actively involved in obtaining á court order appointing Mrs. Warren as the guardian of the proceeds Tammy Barnard received as a result of a judgment in the ease.
In reaching the conclusion that Charles Steinberg was involved in this case through the time of the trial, we are particularly persuaded by a letter written to Steinberg by Frank Dudenhefer on October 5, 1991, less than one month prior to the trial. In this correspondence, Dudenhefer requested information on the status of the guardianship appointment of Mrs. Warren which Steinberg was handling and also reiterated a request for research of Florida statutes for use in a jury charge. The letter also contains discussion, of a proposed contingency fee Inagreement which would include a provision on punitive damages which is permitted under Louisiana law. Mr. Dudenhefer also discussed with Steinberg the toxicology report he obtained and the possibility of settlement, and requested that Steinberg contact the client concerning the impending trial date. This is hardly the type of letter that would be sent to an attorney who was not participating in the litigation of the case.
With regard to the division of fees, the correspondence also contains the following:
I have reviewed our file and do not see any letter outlining a division in fees between our respective offices. In our conversation several days ago, I suggested to you that we review our files and determine how the Souilant fee was handled and that we would expect to be treated no less favorably than in Souilant. In reviewing the Souilant distribution and in speaking with John Cummings, I now understand that the Souilant case was handled on the basis of a 50-50 split between our respective offices but that there was an equal sharing in the advancement of costs as well as an equal distribution of the pre-trial and trial work. When Cory first asked that we become involved in the Barnard litigation, he suggested to us that he would be very active as he was Souilant.
Give some thought to what you think may be appropriate and call me in the next several days so that we can reach a final agreement on this issue.
Although the Cummings' firm contends that this language evidences a modification of the fee-sharing arrangement, we fail to find that the contents of this letter are sufficient to prove a change in terms of the original agreement. Except as discussed in this letter, the parties did not evidence an intent or any [^action to modify their original agreement with regard to the sharing of fees. There is no evidence in the record of any further discussions concerning the fee agreement prior to the trial. In spite of ample time to alter the original contract as to their fee arrangement, we find that the parties failed to do so.
Steinberg’s continued involvement in the case is further supported by other evidence in the record. Several days after the October 5th letter was written, Dudenhefer forwarded to Steinberg a contract of employment which included a 50% contingency fee for the recovery of punitive damages which was not included in the original agreement with the Steinberg firm. By agreement of the parties, Charles Steinberg was responsible for explaining this agreement to the client and obtaining her signature, which he did and returned same to Dudenhefer by letter from a paralegal in the firm dated October 9, 1991. The new agreement resulted in a greater recovery of attorney’s fees by the parties.
The record further indicates that Charles Steinberg did research at the request of the Cummings firm after the trial of this matter regarding the compensation carrier’s right to reimbursement from the proceeds of' the judgment, and Steinberg sent Frank Duden- *14 hefer an extensive letter outlining the information obtained.
It is a recognized principle of law that the parties’ own interpretation of their contract will be followed unless it is contrary to law. In this case, the course of dealings between the parties up through at least one month prior to trial indicates to this Court that the parties intended to share the attorney’s fees recovered on an equal basis. The Cummings firm continued to request information, legal services and client contact from Steinberg up until and even after the trial of this matter. Further, the parties failed to enter into an agreement | ^which modified the oral agreement to share the fees equally.
Under the circumstances presented here, we find that the trial court was manifestly erroneous in determining that there was a breach of the joint venture agreement between the parties. We find that the division of the fee is in relative proportion to the services performed by each lawyer. There has been no showing that the client was not properly represented or that the rules of the Code of Professional Responsibility were violated. The contract of representation executed with the client by Stutin’s firm states that the client agrees to the participation and association of another attorney or law firm and that the other attorney or law firm would be bound by the terms of the contract with the client.
In the present case, there was no showing that the Steinberg firm ever refused to give assistance to the Cummings firm when requested. The record shows that both law firms were retained throughout the trial; Both remained responsible to their client throughout the lawsuit. Although the record indicates that a large proportion of the trial preparation work was performed by the Cummings firm, it cannot be held that Stutin or Steinberg withheld services to the ease or failed in their responsibilities to the client. Likewise, in the Souilant case, Stutin performed the bulk of the trial preparation work, while Cummings maintained contact with the client, and the parties shared the fee on an equal basis.
Although the record may show that the quantity of work and advancement of costs invested by the Cummings firm outweighs that of the Steinberg firm in this case, this Court is not in a position to perform the role of telling attorneys that they must perform a certain amount of work, or attend a certain number of depositions, or contact the client a certain number of times in order to become | ^entitled to a certain portion of the fee. The parties in this case are professionals who entered into a fee sharing arrangement which had been successfully utilized in a previous case. The agreement was not altered by the parties during the representation of the client, and the record fails to support a finding that the division of the fee as agreed to by the parties was not in proportion to the services performed by each attorney. We therefore find that the trial court erred in modifying the agreement between the two law firms without a sufficient basis in the record. We therefore reverse the trial court’s judgment insofar as it reduces the Steinberg firm’s percentage of the fee to 30%, and hold that plaintiff is entitled to' share in the fee as agreed on a 50-50 basis.

Quantum Meruit

Although Cummings argues that a joint venture did not exist between the parties and Steinberg is only entitled to recover on a quantum meruit basis, we find no merit in this argument. There is no dispute that Stutin in this ease procured the employment of the Cummings firm to assist him in the Barnard case, and this agreement between the two attorneys constitutes a joint venture under Duer. This is not a situation as in Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1978) where one of the attorneys was discharged by the client, making it appropriate to assess the fees on a quantum meruit basis. It has been held that a quantum meruit approach does not apply in a situation where two lawyers or firms execute a single contingency fee contract, neither is discharged, and both are involved in the case through its conclusion. In such a situation, the single contingency fee is to be divided equally between the two lawyers or firms. DeFrancesch v. Hardin, supra, 510 So.2d 42, 45. See also, Fontenot & Mitchell v. Rozas, *15 Manuel, etc., 425 So.2d 259, 260 (La.App. 3 Cir.1982), |15 writ denied, 432 So.2d 268 (La. 1983).
There is no evidence in this ease indicating that the Steinberg firm was discharged by the client prior to trial. Further, although Cummings disputes the Steinberg firm’s level of involvement throughout the litigation, the evidence in the record' as discussed above indicates that the Steinberg firm remained involved in this case through trial. Since neither firm was discharged at any stage of the proceedings and both were involved in the case through trial, we agree with the trial court that quantum meruit does not apply.
Defendant relies on a decision of Matter of P & E Boat Rentals, Inc., 928 F.2d 662 (5th Cir.1991), in which the federal court held that referral counsel whose investment in the case was minimal was only entitled to share in the fee on a quantum meruit basis. The court in that case rejected the joint venture theory as set forth by Duer and Scurto v. Siegrist. The trial court reviewed the federal decision, and declined to follow it for the reason that it misstates Louisiana law in determining how a fee resulting from a contingency fee contract should be split between the parties. We also decline to follow the federal court’s decision, and find that the state court decision of Duer and Scurto v. Siegrist are controlling and directly applicable to the present case.

The Amended Judgment

Plaintiff contends that the trial court erred in rendering the amended judgment and reducing the percentage of the fee recoverable to Steinberg to 15%, or half the amount originally awarded. We agree.
Charles Steinberg brought suit on behalf of the law partnership of Rice, Steinberg and Stutin, P.A. The original contract with Judy Warren was executed by Corey Stutin on behalf of the law firm of Rice, Steinberg and Stutin, |if;P.A. Plaintiff introduced evidence that the firm name changed to Steinberg and Stutin after the original agreement was executed. Plaintiff also introduced evidence that Charles Steinberg and Corey Stutin agreed to dissolve the partnership in March of 1990. At this point, Stutin was no longer a member of the firm, although according to the agreement between the parties, Stutin retained an individual interest to collect from the partnership certain consulting fees on the files which were in existence at the dissolution of the partnership.
A dissolved partnership maintains a fictional existence with respect to its past transactions and existing assets, until all of its affairs are wound up and completed. This fictional existence permits the partnership to liquidate its affairs, perform existing contracts, collect its debts, pay its obligations and distribute its assets according to the partnership agreement. La. C.C. art. 2834; Edco Properties v. Landry, 371 So.2d 1367, 1373 (La.App. 3 Cir.), writ denied, 375 So.2d 945 (La.1979).
In the petition for breach of contract, the law firm of Rice, Steinberg and Stutin, P.A., was properly named as party plaintiff as that entity was the party to the contract. Corey Stutin, a former member of the partnership, was not an indispensable party to this lawsuit, as one member of the partnership is entitled to bring suit on behalf of the partnership to collect its debts even after the dissolution of the partnership. We find that the trial court erred in determining that the law firm only had a 50% interest in the recovery of the fund, and that Corey Stutin personally owned the other 50% interest. Nothing in the law or in the agreement between the parties provides that Stutin as a former partner personally owns 50% of the recovery of attorney’s fees in the Barnard matter. Rather, as per the agreement between the parties, Stutin only retains an individual | ^interest in collecting a portion of the fee from the partnership. The partnership as the party to the contract of representation with the client is the proper party to enforce this contract on behalf of the partnership, and Statin’s claim to collect his individual interest in the sums recovered by the partnership must be brought against the partnership. We therefore hold that the law firm of Rice, Steinberg and Stutin, P.A., and its successor partnership of Steinberg and Stutin, is entitled to recover the entire 50% of the attorney’s fees generated in the Barnard matter.

*16
The ABA Rules and the Florida Rules

Finally, defendant contends that the trial court erred in disregarding the American Bar Association and Florida rules. The American Bar Association’s Model Rules of Professional Conduct, Rule 1.5(e), governs the division of fees between lawyers, and provides in part:
(e) a division of fee between lawyers who are not in the same firm may be made only if:
(1) the division is in proportion to the services performed by each lawyer, or by written agreement with the client, and each lawyer assumes joint responsibility for the representation.
We fail to find that this rule was violated in the present case. First, the contract of representation executed by Corey Stutin with the client contained a paragraph in which the client agreed to the participation and association of another attorney or law firm and that that firm would assume the same legal responsibility to the client for the performance of legal services in the case. Further, as discussed above, we find that the division of the fee in this case is in proportion to the services performed by each lawyer, and thus there is no conflict with the rules of professional responsibility.
Iigln addition, although defendant contends that the trial court erred in disregarding the Florida’s rules of professional responsibility, we fail to find that such rules were applicable to the present case, or that defendant proved that these rules were violated. This argument has no merit.

CONCLUSION

Accordingly, for the reasons stated herein, the judgment of the trial court finding a joint venture between the parties is affirmed. However, the judgment finding that the firm of Rice, Steinberg and Stutin, P.A. is entitled to 30% of the attorney’s fees in the Barnard case is amended to provide that the firm is entitled to 50% of the fee. In all other respects, the judgment of October 7, 1996 is affirmed.
In addition, the trial court’s amended judgment dated December 20, 1996 is reversed insofar as it reduces the amount of the judgment to 15% of the fee or $89,063.00. We hereby render judgment in favor of plaintiff, Rice, Steinberg and Stutin, P.A., and against the law firm of Cummings, Cummings and Dudenhefer in the amount of 50% of the attorney’s fees recovered in the Barnard matter, or $156,252.00. Each party is to bear its own costs of this appeal.

AFFIRMED IN PART AND AMENDED; REVERSED IN PART AND RENDERED.

JjPER CURIAM.
In our original opinion in this matter issued on March 11,1998, there is a mathematical error regarding the amount of attorney’s fees awarded to plaintiff, the law firm of Rice, Steinberg and Stutin. In that opinion, we stated that plaintiff is entitled to 50% of the attorney’s fees recovered in the matter of Barnard v. Frederick, et al. However, the record indicates the attorney’s fees recovered in that case was $260,423.69, 50% if which is $130,211.84, and not $156,252.00 as stated in our original opinion. Therefore, our original opinion is amended to render judgment in favor of plaintiff, Rice, Steinberg and Stutin and against the law firm of Cummings, Cummings & Dudenhefer in the amount of $130,-211.84.
In all other respects, our opinion remains unchanged.

. These are the undisputed facts regarding the Barnard lawsuit. None of the pleadings or documents of that case are included in the record before us.